USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:____1/21/16____

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                      :

BROADCAST MUSIC, INC.; MJ PUBLISHING TRUST :
d/b/a MIJAC MUSIC; BEECHWOOD MUSIC       :
CORPORATION; and SONY/ATV LATIN MUSIC   :
PUBLISHING LLC,                        :
                                        :
                            Plaintiffs,    :
                                          :
                   -v-                    :
                                        :
PRANA HOSPITALITY, INC. d/b/a PRANNA; RAJIV :
SHARMA and PAYAL SHARMA, each individually, :
                                        :
                           Defendants.   :
                                        :
------------------------------------------------------------X

15 Civ. 1987 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

    Plaintiffs Broadcast Music, Inc. ("BMI"), MJ Publishing Trust, Beechwood Music Corporation, and Sony/ATV Latin Music Publishing LLC bring this action for copyright infringement against defendants Prana Hospitality, Inc. ("Prana"), Rajiv Sharma, and Payal Sharma. Plaintiffs claim that defendants, the owners of a New York City restaurant/bar, violated the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and willfully infringed their copyrights, by publicly performing three of plaintiffs' copyrighted musical compositions without authorization.

    Plaintiffs now move for summary judgment on their claims, and seek an injunction prohibiting defendants from further infringing any copyrighted musical compositions licensed by BMI. Plaintiffs also request an award of statutory damages under 17 U.S.C. § 504(c), as well as attorneys' fees and costs under 17 U.S.C. § 505.

    For the reasons that follow, plaintiffs' motion for summary judgment is granted. The Court also grants plaintiffs' motions for an injunction, attorneys' fees, and costs, and awards statutory damages.

## I.     Background

### A.      Facts[1]

BMI is a performing rights society that licenses the right to publicly perform a repertoire of 10.5 million copyrighted musical works.  Lloyd Decl. ¶¶ 3, 5.  BMI acquires non-exclusive public performance rights through agreements with copyright owners, such as composers and music publishing companies.  *Id.* ¶ 2.  BMI, in turn, issues "blanket license agreements" to music users, such as broadcasters and the owners and operators of restaurants and night clubs, which permit them to host public performances of any of the works in BMI's repertoire.  *Id.*

The other plaintiffs are the copyright owners of the musical compositions that are the subject of this lawsuit: "Suavemente," "Billie Jean," and "We Will Rock You."  Pl. 56.1, ¶¶ 17–19.  BMI has acquired public performance rights from these plaintiffs for these songs.  *Id.* ¶ 20.

---

[1] The Court's account of the underlying facts is drawn primarily from plaintiffs' submissions in support of this motion, including: plaintiffs' Local Civil Rule 56.1 Statement of Material Facts in Support of Motion for Summary Judgment, Dkt. 23 ("Pl. 56.1"); the Declaration of J. Brugh Lower, Dkt. 24 ("Lower Decl."), and attached exhibits; the Declaration of Brian Mullaney, Dkt. 25 ("Mullaney Decl."), and attached exhibits; the Declaration of Hope M. Lloyd, Dkt. 26 ("Lloyd Decl."), and attached exhibits; and the Supplemental Declaration of J. Brugh Lower, Dkt. 29 ("Lower Supp. Decl."), and attached exhibit.  Citations to plaintiffs' 56.1 Statement incorporate the evidentiary materials cited therein.  Defendants did not submit a Rule 56.1 Statement or any sworn statements in support of their opposition to plaintiffs' motion.  Where facts stated in plaintiffs' 56.1 Statement are supported by testimonial or documentary evidence and not denied by defendants, or denied by defendants without citation to conflicting admissible evidence, the Court has found such facts to be true.  *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* Rule 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[ ] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."); *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.").

Prana is a New York corporation that operates and maintains an establishment, Pranna, located at 79 Madison Avenue in New York City, which serves as a restaurant, bar, and lounge. Pl. 56.1, ¶ 3.  At all relevant times, Rajiv Sharma has been an owner and the Chief Executive Officer of Prana, *id.* ¶ 9, and Payal Sharma has been an owner and officer of Prana, *id.* ¶ 10.

At some point before September 2012, BMI learned that Pranna was hosting public musical performances by DJs without a license from BMI or permission from the copyright owners whose works were being performed.  Mullaney Decl. ¶ 3.  On September 13, 2012, BMI sent a letter to Pranna advising defendants of their obligations under the Copyright Act, offering to enter into a blanket license agreement with them, and enclosing a license agreement and fee schedule.  *Id.*  BMI received no response.  *Id.*  In October 2012, BMI sent defendants additional letters of the same nature.  *Id.* ¶ 4.  On November 19, 2012, BMI received an email from Pranna's business manager, Grace Tayeh, stating that Pranna "already [had] licensing through the music provider."  *Id.* ¶ 5; *id.*, Ex. A.  A BMI representative replied to Tayeh later that day, informing her that any license possessed by Pranna did not cover DJ performances.  *Id.* ¶ 5; *id.*, Ex. D, at 8.

Between September 2012 and October 2014, BMI sent defendants a total of 48 letters via email, FedEx, and first class mail, initially offering to enter into a license agreement with defendants, and later directing defendants to cease and desist from further public performances of BMI-licensed music.  Pl. 56.1, ¶ 4.[2]  Additionally, BMI called Pranna 42 times, and BMI licensing personnel visited Pranna four times and spoke to persons associated with Pranna's operations on multiple occasions.  *Id.* ¶ 5.  Despite these overtures, defendants did not enter into a license with BMI or the other plaintiffs.  *Id.* ¶ 6.

---

[2] These letters were addressed to Rajiv Sharma and Payal Sharma, and to Tayeh.  *Id.*

On May 17, 2014 and October 11, 2014[3], BMI sent music investigator Timothy Braunscheidel to Pranna to make audio recordings and written reports of the music being publicly performed there on those nights.  Mullaney Decl. ¶¶ 15, 17; *see id.*, Exs. B–C.[4]  BMI later authorized John Davis, a "performance identification employee," to review the recordings for BMI-licensed works.  Mullaney Decl. ¶ 17; *see id.*, Ex. C.  Braunscheidel's and Davis's reports reveal that on May 17, 2014, "Suavemente" was performed by a DJ while Pranna was open to the public, and on October 11, 2014, "Suavemente," "Billie Jean," and "We Will Rock You" were publicly performed there.  Pl. 56.1, ¶¶ 12–13.  Pranna was not licensed by BMI or any other plaintiffs to publicly perform any of these musical compositions on those dates.  *Id.* ¶ 14.  On May 20, 2014, October 14, 2014, and October 21, 2014, BMI sent defendants letters by FedEx and first class mail advising them of the investigations.  Mullaney Decl. ¶¶ 16, 18–19.

To date, Pranna has not obtained a license from any plaintiff, and continues to permit public performances of musical compositions at its establishment, Pl. 56.1, ¶¶ 15–16, including, plaintiffs allege, songs licensed by BMI, Mullaney Decl. ¶ 24.

### B.    Procedural History

On March 17, 2015, plaintiffs filed a complaint, bringing three claims of copyright infringement against defendants.  Dkt. 1.  On May 21, 2015, defendants answered.  Dkt. 11.

On July 24, 2015, plaintiffs served defendants with plaintiffs' first set of requests for admission, interrogatories, and requests for production of documents.  Pl. 56.1, ¶ 1; *see* Lower Decl., Exs. A–C.  On August 14, 2015, defendants served plaintiffs with defendants' first set of

---

[3] Although the October 11, 2014 performance extended into the early morning hours of the next day, for simplicity's sake, the Court refers to this performance by the date on which it commenced.

[4] On both evenings, Braunscheidel was required to pay a cover charge for admission.  *Id.*, Ex. B, at 1 ($30 fee on May 17, 2014); *id.*, Ex. C, at 1 ($10 fee on October 11, 2014).

interrogatories and requests for production of documents.  Pl. 56.1, ¶ 2.  On September 16, 2015,

plaintiffs responded to defendants' discovery requests.  *Id.*  Discovery closed on October 16,

2015.  Dkt. 15.  To date, defendants have not responded to plaintiffs' discovery requests.  Pl.

56.1, ¶ 1.[5]

On December 9, 2015, plaintiffs filed a motion for summary judgment, Dkt. 21, as well

as a memorandum of law in support, Dkt. 22 ("Pl. Br.").  Plaintiffs also filed a Rule 56.1

Statement, Pl. 56.1; a declaration by plaintiffs' counsel, Lower Decl.; a declaration by BMI's

vice president for sales and licensing, Mullaney Decl.; and a declaration by BMI's assistant vice

president of legal affairs, Lloyd Decl.  On December 16, 2015, defendants filed a brief in

opposition.  Dkt. 27 ("Defs. Br.").  On December 22, 2015, plaintiffs replied, Dkt. 28 ("Pl. Reply

Br."), and filed a supplemental declaration by plaintiffs' counsel, Dkt. 29 ("Lower Supp. Decl.").

## II.      Legal Standards Applicable to Summary Judgment Motions

To prevail on a motion for summary judgment, the movant must "show[ ] that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a

question of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To survive a summary judgment motion, the opposing party must establish a genuine

issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A);

---

[5] Because defendants failed to respond within 30 days to plaintiffs' requests for admission, the
matters of fact contained therein are deemed admitted.  *See* Fed. R. Civ. P. 36(a)(3) (a matter
included in a request for admission is deemed admitted "unless, within 30 days after being
served, the party to whom the request is directed serves on the requesting party a written answer
or objection"); *S.E.C. v. Batterman*, No. 00 Civ. 4835 (LAP), 2002 WL 31190171, at *5
(S.D.N.Y. Sept. 30, 2002) ("Rule 36 admissions may be used for Rule 56 summary judgment.");
*Virga v. Big Apple Const. & Restoration Inc.*, 590 F. Supp. 2d 467, 471 (S.D.N.Y. 2008) (citing
*Donovan v. Carls Drug Co.*, 703 F.2d 650, 651 (2d Cir. 1983)) ("The Second Circuit permits
admissions under . . . rule 36(a) to be used for summary judgment.").

*see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).  "Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

**III.    Discussion**

**A.    Liability for Copyright Infringement**

Plaintiffs argue that they are entitled to summary judgment on each claim of copyright infringement because the undisputed facts show that defendants permitted unauthorized public performances at Pranna of three musical compositions within BMI's repertoire.  Plaintiffs are correct.

**1.    Plaintiffs Have Established That They Are Entitled to Judgment on Their Copyright Claims**

The Copyright Act gives the owner of a copyright the exclusive right to perform, or to authorize others to perform, the copyrighted work.  17 U.S.C. § 106(4).  A public performance made without the requisite license or authorization from the copyright owner constitutes an infringement of the work.  *Broad. Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 659 (S.D.N.Y. 1996) (citing *Shapiro, Bernstein & Co. v. H.L. Green Co*., 316 F.2d 304, 307 (2d Cir. 1963)).

To prevail on a claim of copyright infringement based on an unauthorized public performance, a plaintiff must establish: (1) originality and authorship; (2) compliance with all formalities of the Copyright Act; (3) plaintiff's ownership of the copyrights at issue; (4) defendant's public performance of the compositions for profit; and (5) defendant's lack of authorization for the public performance. *Broad. Music, Inc. v. 315 W. 44th St. Rest. Corp.*, No. 93 Civ. 8182 (MBM), 1995 WL 408399, at \*2 (S.D.N.Y. July 11, 1995) (collecting cases). Here, plaintiffs have satisfied each of these requirements for the three musical compositions that form the basis for their claims.

The first three elements are established by the declaration of BMI's assistant vice president of legal affairs, Hope M. Lloyd, which states that the music publisher plaintiffs own each copyright implicated by this lawsuit, and have granted BMI the right to publicly perform the compositions and to issue public performance license agreements to music users.  Lloyd Decl. ¶¶ 4–5.  Attached to Lloyd's declaration are copies of the relevant certificates and assignments, which set forth the names of the authors and publishers of each song, the date of copyright registration, and the registration number. *Id.*, Ex. A.  These documents constitute "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); *see Gund, Inc. v. Applause, Inc.*, 809 F. Supp. 304, 307 (S.D.N.Y. 1993) ("Certificate [of Registration] is *prima facie* evidence of the copyrightability of the work and the validity of such copyright, shifting to [the defendant] the burden of proving the contrary."); *BMI v. 44th St. Rest. Corp.*, 1995 WL 408399, at \*2 (finding that official certificates satisfy the first three elements of a claim of copyright infringement).  Defendants do not dispute these facts. *See* Lower Decl., Ex. A ¶¶ 21–28; Pl. 56.1, ¶¶ 17–20.

The element of public performance is established by Braunscheidel's Certified Infringement Reports and Davis's Certification Performance Identification Declaration, which attest that "Suavemente," "Billie Jean," and "We Will Rock You" were publicly performed at Pranna on the evenings of May 17, 2014 and October 11, 2014.  *See* Mullaney Decl. ¶¶ 15, 17; *id*., Exs. B, C; *BMI v. 44th St. Rest. Corp.*, 1995 WL 408399, at *3 ("The declaration of plaintiff BMI's agent, . . . as well as reports he filed after inspecting the Cafe on July 30 and August 5, 1993 . . . , establish the element of public performance of the nine songs."); *Broad. Music, Inc. v. Haibo, Inc.*, No. 10 Civ. 240S (WMS), 2012 WL 843424, at *2–4 (W.D.N.Y. Mar. 12, 2012) (relying on certified reports to establish public performance element).  Moreover, defendants have admitted, through their failure to respond to plaintiffs' requests for admission, that the musical compositions were publicly performed on those dates.  *See* Lower Decl., Ex. A, ¶¶ 16–20; Pl. 56.1, ¶¶ 13–14.  In light of these admissions, and the fact that Braunscheidel entered Pranna and observed the DJ performances as a member of the public, the Court will not credit the unsubstantiated assertion in defendants' legal brief that the alleged performances occurred at private events.  *See* Defs. Br. ¶ 4.

As to the "for profit" requirement, this element is satisfied "[a]s long as the [venue] was established as a profit-making enterprise, and some nexus may be found between the performances and the general business of defendants."  *BMI v. 44th St. Rest. Corp.*, 1995 WL 408399, at *3 (citing *Herbert v. Shanley Co.*, 242 U.S. 591, 595 (1917) ("Whether [music] pays or not, the purpose of employing it is profit, and that is enough.")); *accord Broad. Music, Inc. v. JJ Squared Corp.*, No. 11 Civ. 5140 (JFB), 2013 WL 6837186, at *5 (E.D.N.Y. Dec. 26, 2013) (finding profit element satisfied where "no reasonable factfinder could conclude that the band performed 'with no expectation of profit'").  Here, it is undisputed that Pranna is operated as a

8

for-profit establishment.  Pl. 56.1, ¶¶ 7–8.  Moreover, the record shows that, on both nights in question, Braunscheidel was required to pay a fee for admission to Pranna.  *See* Mullaney Decl., Ex. B, at 1; *id.*, Ex. C, at 1.  Plaintiffs have, therefore, established that the performances generated revenue and "furthered defendants' general business to provide entertainment and refreshments to the public."  *BMI v. 44th St. Rest. Corp.*, 1995 WL 408399, at *3.

The final element, lack of authorization, is established by the declaration of BMI's vice president for sales and licensing, Brian Mullaney, who avers that defendants have not, at any relevant time, possessed licenses from BMI to perform the musical compositions in question, and that the performances were not otherwise authorized.  Mullaney Decl. ¶¶ 3, 14, 23–24.  Defendants' assertion that they possessed a license for background music is of no consequence, because, by its express terms, any such license would not cover live music or music performed by DJs.  *See* Defs. Br. ¶¶ 3, 7; *id.*, Ex. A (letter from Gray V indicating that "[a]s a Gray V client, [Pranna] would be covered for background music when using the Gray V provided content (not live music, DJs or television)").  Moreover, through their failure to respond to plaintiffs' requests for admission, defendants have admitted that they did not have a license for a DJ to publicly perform any BMI-licensed songs on May 17, 2014 or October 11, 2014.  *See* Lower Decl., Ex. A, ¶¶ 78–79.

In sum, plaintiffs have demonstrated the absence of any disputed facts with respect to the five elements of their copyright infringement claims.  They are, therefore, entitled to summary judgment as to liability on each of these claims with respect to any defendant responsible for the public performance of the works in question.

###### 2.      Defendants May Be Held Jointly and Severally Liable for the Acts of Copyright Infringement that Occurred at Pranna

The Court next considers whether the named defendants may be held liable for the acts of infringement, insofar as these were committed, most immediately, by the DJs that performed at Pranna.  "[I]t has long been held that one may be liable for copyright infringement even though he has not himself performed the protected composition."  *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1161–62 (2d Cir. 1971).  Rather, all entities and persons who "participate in, exercise control over, or benefit from" a copyright infringement are jointly and severally vicariously liable as copyright infringers.  *Sygma Photo News, Inc. v. High Society Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985).  As the Second Circuit has noted, "the cases are legion which hold the dance hall proprietor liable for the infringement of copyright resulting from the performance of a musical composition by a band or orchestra whose activities provide the proprietor with a source of customers and enhanced income."  *Shapiro*, 316 F.2d at 307.

This is such a case.  It is undisputed that Prana operates and maintains Pranna, has the right and ability to direct and control Pranna's activities and to supervise its contractors and employees, and has a direct financial interest in Pranna.  Pl. 56.1, ¶¶ 3, 7; *see* Lower Decl., Ex. A, 1–4; *id.*, Exs. D, E; Dkt. 11 ("Defs. Answer"), ¶ 8.  It is further undisputed that Rajiv Sharma and Payal Sharma are officers and owners of Prana and have, at all relevant times, operated and maintained Pranna, had the right and ability to supervise the persons employed by Pranna, and had a direct financial interest in both Prana and Pranna.  Pl. 56.1, ¶¶ 8–10; *see* Lower Decl., Ex. A, ¶¶ 5–14; *id.*, Exs. D–F; Defs. Answer ¶¶ 11–14.  Plaintiffs have, therefore, established that all three defendants may be held jointly and severally liable for the acts of copyright infringement that occurred at Pranna.  *See, e.g.*, *Broad. Music, Inc. v. DFK Ent't, LLC*, No. 10 Civ. 1393

(GLS), 2012 WL 893470, at *3 (N.D.N.Y. Mar. 15, 2012) (holding corporate owner and general manager of club jointly and severally liable, and noting that general manager had the "right and ability to supervise the infringing activity" even though he allowed others to make the "day-to-day management decisions"); *Cass Cty. Music Co. v. Khalifa*, 914 F. Supp. 30, 33 (N.D.N.Y.) ("defendant had a direct financial interest in recreation hall activities such as live band performances because they generate rental income, admission fees, and revenues from sales of food and beverages"), *aff'd*, 112 F.3d 503 (2d Cir. 1996).

Defendants argue that they should not be found liable for any copyright infringement on the part of the DJs who performed the musical compositions because Pranna did not directly employ the DJs or control their performances. Defs. Br. ¶¶ 4, 6. This argument fails because the Second Circuit has held that proprietors are liable for the infringements of performers within their establishment, "whether the [performer] is considered, as a technical matter, an employee or an independent contractor, and whether or not the proprietor has knowledge of the compositions to be played or any control over their selection." *Shapiro*, 316 F.2d at 307.[6] Indeed, it is well established that a proprietor may be held liable "even if [he] tells the [performer] not to play protected works, or is unaware that the songs performed were copyrighted." *BMI v. 44th St. Rest. Corp.*, 1995 WL 408399, at *4 (collecting cases) (internal quotation marks and citations

---

[6] *Accord Design Tex Grp., Inc. v. U.S. Vinyl Mfg. Corp.*, No. 04 Civ. 5002 (JSR), 2005 WL 2063819, at *1–2, 4 (S.D.N.Y. Aug. 24, 2005) (rejecting co-owner's claim that he had "very little involvement in anything," and imposing individual liability based on evidence that defendant "had the ability to supervise the infringing activity" but simply "chose not to do so"); *Cass Cty. Music*, 914 F. Supp. at 33–35 ("As the manager of [the infringing entity] and the person who rents out its recreation hall for musical performances, defendant has the right and ability to supervise the infringing activity. . . . Rather th[a]n help defendant establish that his infringement was innocent, his evidence [that he neither hired the performer, knew whether she had permission to perform the songs, nor attended the musical performances] further demonstrates that he turned a blind eye towards copyright infringements on [the establishment's] premises." (internal quotation marks and citations omitted)).

omitted).  Accordingly, because defendants each had the "right and ability to supervise the infringing activity and also ha[d] a direct financial interest in such activities," plaintiffs are entitled to judgment against each defendant as a matter of law.  *Gershwin Pub. Corp.*, 443 F.3d at 1162.

### B.      The Forms of Relief Sought

Having determined that plaintiffs are entitled to summary judgment against defendants, the Court turns to consider plaintiffs' requested remedies.  Plaintiffs seek relief in the form of (1) a permanent injunction, (2) statutory damages, and (3) an award of costs and attorneys' fees. Although defendants (in addition to disputing liability) generally oppose relief, they do not specifically object to any one component of the requested relief.

### 1.      Permanent Injunction

Plaintiffs seek a permanent injunction prohibiting defendants, and all persons acting under their permission or authority, from further infringing any copyrighted musical compositions licensed by BMI.  Pl. Br. 12.  Under § 502 of the Copyright Act, the Court may issue an injunction on such terms as it deems "reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502; *see Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995).

However, an injunction should be granted only where the plaintiff has established the following four elements:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)); *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 551–52 (S.D.N.Y. 2008). Here, plaintiffs have satisfied each of these requirements.

First, courts routinely find the harm suffered by plaintiffs in copyright cases to be "irreparable" on the theory that lost sales or diminished reputation can be difficult if not impossible to measure. *Beastie Boys v. Monster Energy Co.*, 87 F. Supp. 3d 672, 677 (S.D.N.Y. 2015) (collecting cases); *see also Salinger*, 607 F.3d at 81 ("Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer."). The Court is similarly satisfied here that there is no practical way of determining the actual damages sustained by plaintiffs as a result of defendants' infringement, and that the harm endured is one that plaintiffs "should not be expected to suffer." *Salinger*, 607 F.3d at 81. This factor, therefore, favors injunctive relief.

Second, the Court finds that remedies at law are not adequate to compensate plaintiffs for their injuries. Courts in this Circuit have consistently found monetary damages inadequate where the defendant poses a significant threat of future infringement. *See, e.g.*, *Hounddog Prods., LLC v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 633 (S.D.N.Y. 2011) (finding remedies at law inadequate where there was "no evidence to suggest that [defendant] has stopped or will stop" infringing plaintiffs' copyrights); *Pearson Educ., Inc. v. Vergara*, No. 09 Civ. 6832 (JGK) (KNF), 2010 WL 3744033, at *4 (S.D.N.Y. Sept. 27, 2010), *adopted by* Order at Dkt. 21 (S.D.N.Y. May 11, 2011) ("A plaintiff has no adequate remedy at law where, absent an injunction, the defendant is likely to continue infringing its copyright(s)." (internal quotation marks and citation omitted)); *Ortho–O–Vision, Inc. v. Home Box Office, Inc*., 474 F. Supp. 672, 686 (S.D.N.Y. 1979).

13

Here, the record strongly suggests a significant threat of future copyright infringements at Pranna.  It is undisputed that defendants continue to permit the public performance of musical compositions at Pranna, and, to date, have not entered into a license with BMI.  *See* Lower Decl., Ex. F; Mullaney Decl. ¶¶ 23–24; Defs. Answer ¶ 9.  Defendants have adduced no evidence to suggest that they have stopped or will stop infringing plaintiffs' copyrights in the future.[7]  To the contrary, defendants' manifest disregard for the flood of letters, emails, phone calls, and visits they received from BMI representatives between September 2012 and October 2015 leads the Court to conclude, firmly, that defendants will continue their unlawful conduct unless and until an injunction issues.[8]  Given the substantial threat of future infringement, the Court finds that plaintiffs cannot be compensated by monetary relief alone.

Third, the balance of hardships tips overwhelmingly in plaintiffs' favor.  Requiring plaintiffs to commence litigation for each future violation would pose a considerable hardship, whereas the Court cannot detect any hardship that an injunction obliging defendants to comply with their legal duties would impose on them.  *See Beastie Boys*, 87 F. Supp. 3d at 679 (defendant had no legitimate interest in further dissemination of video that infringed plaintiffs' copyrights).  Indeed, to the extent defendants "elect[ ] to build a business on products found to infringe[,] [they] cannot be heard to complain if an injunction against continuing infringement

---

[7] Defendants' assertion that "Pranna is not opposed to entering into a license with BMI," Defs. Br. ¶ 6, is belied by evidence in the record, which reveals defendants' persistent refusal to obtain such a license, *see* Pl. 56.1, ¶¶ 4–6, 15; Mullaney Decl., Ex. D.  Defendants have come forward with no evidence that Pranna has ceased performing BMI-licensed music.

[8] The Court does not credit defendants' unsubstantiated claims that they doubted the legitimacy of BMI's letters and believed they did not need a BMI license.  *See* Defs. Br. ¶ 7.  Tellingly, defendants have not offered any sworn statements as to these purported but risible claims as to their subjective beliefs.  And defendants' claims of good faith are contradicted by the evidence in the record, which reflects a lack of any proper license covering music performed by a DJ, and persistent disregard for BMI's pre-litigation communications.

destroys the business so elected." *Mint, Inc. v. Amad*, No. 10 Civ. 9395 (SAS), 2011 WL 1792570, at *3 (S.D.N.Y. May 9, 2011) (internal quotation marks and citation omitted); *see also Granite Music Corp. v. Ctr. St. Smoke House, Inc.*, 786 F. Supp. 2d 716, 730 (W.D.N.Y. 2011) ("[A] permanent injunction should be preferable to Defendants than being repeatedly subject to litigation for future violations.").

Finally, the Court is firmly convinced that injunctive relief here will advance the public's "compelling interest in protecting copyright owners' marketable rights to their work" so as to "encourage[e] the production of creative work." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) (citing, *inter alia*, *Golan v. Holder*, 132 S. Ct. 873, 890 (2012); *Metro–Goldwyn– Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 961 (2005)).

The Court, therefore, finds that plaintiffs are entitled to a permanent injunction that prohibits defendants and all persons acting under their permission or authority from further infringing any copyrighted musical compositions licensed by BMI.[9]

---

[9] In so holding, the Court follows numerous decisions granting permanent injunctions against establishment owners, who, after refusing to sign a proper licensing agreement, allowed the public performance of a musical composition within the plaintiff's repertoire. *See, e.g.*, *Realsongs, Universal Music Corp. v. 3A N. Park Ave. Rest Corp.*, 749 F. Supp. 2d 81, 93 (E.D.N.Y. 2010) (permanent injunction was appropriate where "it [was] clear from Defendants' failure to respond to over twenty communications from ASCAP on behalf of Plaintiffs and their failure to participate in this action that Defendants have no intention of following the law and will likely continue to violate Plaintiffs' copyrights without an injunction"); *Gladys Music v. Bilbat Radio, Inc.*, No. 07 Civ. 6086 (MAT), 2007 WL 3033960, at *2 (W.D.N.Y. Oct. 15, 2007) (granting permanent injunction against bar owners who permitted copyrighted music to be performed despite their knowledge of such copyrights and repeated refusal to sign licensing agreement); *but see Broad. Music, Inc. v. Pamdh Enters., Inc.*, No. 13 Civ. 2255 (KMW), 2014 WL 2781846, at *5 (S.D.N.Y. June 19, 2014). Under such circumstances, courts frequently enjoin the defendant not only from performing the musical compositions listed in the plaintiff's complaint, but also from performing any songs for which the plaintiff holds a copyright. *See, e.g.*, *BMI v. 315 W. 44th St. Rest. Corp.*, 1995 WL 408399, at *4 (enjoining defendants from publicly performing any songs in BMI catalogue); *BMI v. R Bar of Manhattan*, 919 F. Supp. at 659 (enjoining unauthorized performance of any copyrighted musical compositions licensed through BMI); *see also Beastie Boys*, 87 F. Supp. 3d at 681 (suggesting that injunction that

2.        **Statutory Damages**

In lieu of actual damages, plaintiffs seek statutory damages, pursuant to § 504(c)(1), in

the amount of $15,000 for each act of infringement, for a total of $45,000.  Pl. Br. 14.

Section 504 of the Copyright Act permits a district court, in its discretion, to award

between $750 and $30,000 for each copyright infringed.  *Island Software and Computer Serv.,*

*Inc. v. Microsoft Corp.*, 413 F.3d 257, 262–63 (2d Cir. 2005) (citing 17 U.S.C. § 504(c)(1)); *see*

*D.C. Comics Inc. v. Mini Gift Shop*, 912 F.2d 29, 34 (2d Cir. 1990) ("Within the[ ] limitations

[set forth by §  504(c)(1)] the court's discretion and sense of justice are controlling." (internal

quotation marks and citation omitted)).

Where a plaintiff demonstrates that the infringement was committed "willfully," the

district court may award as much as $150,000 per infringed work.[10]  *Island Software*, 413 F.3d at

263 (citing 17 U.S.C. § 504(c)(2)).  To prove "willfulness," a plaintiff must show "(1) that the

defendant was actually aware of the infringing activity, or (2) that the defendant's actions were

the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights."  *Id.*;

*accord Hamil Am., Inc. v. GFI*, 193 F.3d 92, 97 (2d Cir. 1999) ("The standard is simply whether

the defendant had knowledge that its conduct represented infringement or perhaps recklessly

disregarded that possibility." (internal quotation marks omitted)); *N.A.S. Imp., Corp. v. Chenson*

*Enters., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) ("[R]eckless disregard of the copyright holder's

rights . . . suffices to warrant award of the enhanced damages." (internal quotation marks and

_____

extends beyond specific act of infringement is appropriate where "transgressions are [ ]likely to
recur").

[10] On the other hand, where the defendant proves that he "was not aware and had no reason to
believe that his . . . acts constituted an infringement," the Court may reduce the award of
statutory damages to a sum of not less than $200.  17 U.S.C. § 504(c)(2).

citation omitted)).  Willfulness may be inferred from a defendant's conduct, *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1010 (2d Cir. 1995), and is often found where a defendant continued the infringing behavior after receiving notice of the license requirement or directions to cease and desist, *see, e.g.*, *BMI v. 44th St. Rest. Corp.*, 1995 WL 408399, at *5; *Microsoft Corp. v. AGA Sols., Inc.*, No. 05 Civ. 5796 (DRH), 2010 WL 1049219, at *1 (E.D.N.Y. Mar. 22, 2010).

Where, as here, the plaintiff does not seek a willfulness enhancement, it is still appropriate for the Court to consider evidence of willfulness in "determining where in the range between $750.00 and $30,000.00 damages should be set."  *Microsoft Corp.*, 2010 WL 1049219, at *1.  The Court should also consider:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).

Statutory damages under the Copyright Act are designed to "discourage wrongful conduct," as well as to provide "reparation for injury."  *Capitol Records, Inc. v. MP3tunes, LLC*, 48 F. Supp. 3d 703, 726 (S.D.N.Y. 2014) (quoting *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952)).  As such, "a statutory damage award should significantly exceed the amount of unpaid license fees," so as to put "infringers on notice that it costs less to obey the copyright laws than to violate them."  *BMI v. R Bar of Manhattan*, 919 F. Supp. at 660 (collecting cases) (internal quotation marks and citations omitted).  Accordingly, where there is evidence of willfulness, courts often impose statutory damages that are more than double the sum of the unpaid licensing fees.  *BMI v. Pamdh*, 2014 WL 2781846, at *3 (collecting cases).

17

Here, there is considerable evidence that defendants willfully infringed plaintiffs' copyrights.  As noted, plaintiffs have shown that between September 2012 and October 2014, BMI sent 48 letters/emails, and made 42 phone calls and four in-person visits to defendants, first alerting defendants of the need to execute a license agreement if they wished to continue playing songs in BMI's repertoire, and later admonishing them to cease and desist their unlawful conduct.  Pl. 56.1, ¶¶ 4–5.[11]  In these communications, BMI repeatedly reminded defendants that "[t]he public performance of BMI music without the proper authorization constitutes copyright infringement and may result in substantial damages under the Federal Copyright Law."  *See, e.g.*, Mullaney Decl., Ex. D, at 32.  Defendants nevertheless refused to secure a license.  Pl. 56.1, ¶ 6.

This conduct easily establishes that defendants, at the least, "reckless[ly] disregard[ed]" plaintiffs' rights.  *Island Software*, 413 F.3d at 263; *see also Broad. Music, Inc. v. Wexford INR LLC*, No. 12 Civ. 1253 (GTS), 2014 WL 4626454, at *11–12 (N.D.N.Y. Sept. 15, 2014) (repeatedly ignoring BMI's letters and phone calls, while continuing to perform licensed compositions without authorization, was "objectively unreasonable" and constituted "willful blindness").

---

[11] Defendants do not dispute that they received these communications.  Rather, they contend that "Pranna did not think they were legitimate and were soliciting a service that was not needed in view of the Gray V background music contract."  Defs. Br. ¶ 7.  But the Gray V letter proffered by defendants actually refutes their claim of innocent conduct, as it explicitly states that a Gray V license would *not* cover live music or music performed by DJs—the type of public performance at issue here.  Defs. Br., Ex. A.  Therefore, even if this letter were authenticated (which it is not), it would not preclude a finding of willfulness.  *See Eastern Am. Trio Prods., Inc. v. Tang Elec. Corp.*, 97 F. Supp. 2d 395, 419 (S.D.N.Y. 2000) (an innocent infringer must "prove that it was not aware and had no reason to believe that his or her acts constituted infringement"); *D.C. Comics*, 912 F.2d at 35 ("The burden is on the defendants to establish that any infringement was innocent . . . .  [I]t is not sufficient for a defendant merely to claim such innocence." (internal quotation marks and citation omitted)).  The Court also notes that the Gray V letter does not actually establish that defendants had a license for background music at the time of the infringement.  Rather, it indicates only that, on April 1, 2015, a date after the alleged infringements occurred, Gray V advised defendants that *if* they were to become a Gray V client, *then* they would be licensed for background music.  Defs. Br., Ex. A.

Also significant, defendants' failure to respond to plaintiffs' requests for discovery or to seriously engage with this case has hindered the Court's ability to ascertain "the expenses saved, and profits earned, by [defendants]" or "the value of the infringing material." *Bryant*, 603 F.3d at 144.  In light of these considerations, the Court finds that an award of statutory damages in an amount well above the statutory minimum is warranted.

Plaintiffs request an award of $15,000 per infringement, for a total of $45,000.  Pl. Br. 14.  This constitutes an amount nearly six times the sum of the licensing fees defendants would have paid BMI between September 2012 and the present.  *See* Mullaney Decl. ¶ 24 (estimating the following fees: (1) $1,811.70 between September 2012 and August 2013; (2) $1,871.10 between September 2013 and August 2014; (3) $1,915.65 between September 2014 and August 2015; and (4) $1,930.50 for the present year).  Plaintiffs base this request on out-of-Circuit cases that have awarded, or left in place awards of, damages of approximately six times the licensing fees that the copyright holder originally sought from the infringer.  *See* Pl. Br. 13–14 (citing, *inter alia*, *Broad. Music, Inc. v. M.R.T.P., Inc.*, No. 12 Civ. 7339 (JFG), 2014 WL 2893203, at *7 (N.D. Ill. June 26, 2014); *Sixx Gunner Music v. Quest, Inc.*, 777 F. Supp. 2d 272, 274 (D. Mass. 2011); *Emi Mills Music, Inc. v. Empress Hotel, Inc.*, 470 F. Supp. 2d 67, 75 (D.P.R. 2006)).

However, Second Circuit case law—including numerous cases brought by BMI—reflects that courts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid.[12]  The record here firmly supports statutory damages at the upper end of this range, but plaintiffs have not explained the basis for exceeding that customary norm.

---

[12] *See, e.g.*, *BMI v. Pamdh*, 2014 WL 2781846, at *4 (awarding $5,000 for three claims of infringement, amounting to a total of "slightly less than three times the unpaid license fees");

The Court therefore approves a reduced award of $12,500 per infringement, for a total of $37,500, which represents approximately five times the sum of BMI's unpaid licensing fees.  In the Court's judgment, this sum, coupled with a permanent injunction, is sufficient to remedy the injuries sustained by plaintiffs, punish defendants for their acts of infringement, and deter others in similar positions from permitting unauthorized public performances of copyrighted musical compositions.

### 3.      Attorneys' Fees and Costs

Finally, the Court considers plaintiffs' request for reimbursement of the costs and attorneys' fees incurred in connection with this action.  Plaintiffs seek a total fee award of $22,364.41, representing $612.92 in costs and $21,751.49 in attorneys' fees.  Pl. Reply. Br. 4.

Section 505 of the Copyright Act authorizes the Court, at its discretion, to award costs and reasonable attorneys' fees to the prevailing party.  17 U.S.C. § 505.  In exercising this discretion, the Court may consider, *inter alia*, "frivolousness, motivation, objective reasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Fogerty v. Fantasy, Inc*., 510 U.S. 517, 534 n.19 (1994) (internal quotation marks and citation omitted).  The Second Circuit has held that it is appropriate to award attorneys' fees where the

---

*BMI v. R Bar of Manhattan*, 919 F. Supp. at 660 (collecting cases and awarding $1,500 for each of eight claims of infringement, totaling "approximately five times what BMI license fees would have been plus plaintiffs' investigative expenses," which the court noted was "at the upper range of statutory damage awards in similar cases"); *Broad. Music, Inc. v. Bayside Boys, Inc*., 12 Civ. 3717 (CBA), 2013 WL 5352599, at *6 (E.D.N.Y. Sept. 23, 2013) (awarding nearly $1,500 for each of six claims of infringement, amounting to five times the cost of the licensing agreement); *Realsongs*, 749 F. Supp. 2d at 87 (awarding $3,000 for each of five claims of infringement, totaling approximately three times the amount of unpaid license fees); *Broad. Music, Inc. v. 120 Bay St. Corp*., 09 Civ. 5056 (BMC), 2010 WL 1329078, at *2 (E.D.N.Y. Apr. 5, 2010) (awarding $4,207.50 for each of seven claims of infringement, totaling "approximately three times the amount plaintiffs would have received in licensing fees if defendants had been properly licensed").

infringement was willful.  *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 289 (2d Cir. 1999); *see also Beastie Boys v. Monster Energy Co.*, No. 12 Civ. 6065 (PAE), 2015 WL 3823924, at *8 (S.D.N.Y. June 15, 2015) ("Courts have awarded fees based on willfulness even where the infringement was reckless rather than knowing.") (collecting cases).

For the reasons already reviewed, the relevant considerations support an award of costs and attorneys' fees to plaintiffs in this case.  *See, e.g.*, *BMI v. R Bar of Manhattan*, 919 F. Supp. at 661 ("considerations of deterrence" supported award of attorneys' fees where defendants willfully disregarded repeated communications by BMI regarding the license requirement); *Granite Music Corp.*, 786 F. Supp. 2d at 736–37 ("The plethora of attempts made by ASCAP to secure an executed licensing agreement from Defendants . . . establishes . . . that such copyright infringements were willful.  As such, Plaintiffs should be granted an award of costs, including attorneys' fees."); *BMI v. DFK Entm't*, 2012 WL 893470, at *5 (finding award of attorneys' fees "both appropriate and necessary 'to advance [the] considerations of compensation and deterrence,'" where defendant "repeatedly ignored BMI's letters and phone calls" (quoting *Fogerty*, 510 U.S. at 534 n.19)).  The Court, therefore, turns to the reasonableness of the award that plaintiffs request.

As to costs, plaintiffs seek reimbursement for $612.92 spent by plaintiffs' counsel in connection with this lawsuit.  Pl. Br. 15–16; Pl. Reply Br. 4.  To support this request, plaintiffs' counsel submitted an itemization of the costs incurred over the course of this action, including court fees, courier fees, service fees, and transportation costs.  *See* Lower Decl., Ex. G.  Having reviewed these disbursements, the Court finds them adequately documented, reasonable, and of the type commonly reimbursed by courts in this District.  *See, e.g.*, *Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13 Civ. 6667 (PAE), 2015 WL 5122530, at *1 (S.D.N.Y. Aug. 31,

2015) (awarding $1,483.05 in costs, including filing fees, proof of service, court reporter services, and interpreter costs); *Gonzalez v. Scalinatella, Inc.*, No. 13 Civ. 3629 (PKC) (MHD), 2015 WL 3757069, at *23 (S.D.N.Y. June 12, 2015) (awarding $1,150.60 in disbursements, representing a court filing fee, and transcript, mailing, and transportation costs); *Nautilus Neurosciences, Inc. v. Fares*, No. 13 Civ. 1079 (SAS), 2014 WL 1492481, at *4 (S.D.N.Y. Apr. 16 2014) (awarding $5,514.39 in costs, including court fees, administrative fees, photocopying, and legal research expenses).

As to attorneys' fees, plaintiffs seek an award of $21,751.49 for a total of 82.8 hours of work completed by members of Gibbons, P.C. in connection with this action.  *See* Pl. Br. 15–16; Pl. Reply Br. 4; Lower Decl. ¶¶ 7–10; Lower Supp. Decl. ¶ 2.  The timekeepers that worked on this matter are: (1) J. Brugh Lower, an associate with approximately seven years of experience and a standard hourly rate of $400; (2) Owen J. McKeon, a director in the firm's intellectual property department with approximately 15 years of experience and a standard hourly rate of $600; (3) Martin Brech, a managing clerk with approximately 20 years of experience and a standard hourly rate of $210; and (4) Fritz Sammy, a case manager with approximately 15 years of experience and a standard hourly rate of $205.  *See* Lower Decl. ¶ 12.  The proposed fee award does not, however, reflect the timekeepers' standard hourly rates.  Instead, it is comprised of: (1) a flat fee of $7,500 for work related to the initiation of this action, filing of the complaint, and initial discovery; (2) a flat fee of $10,000 for activities related to the summary judgment motion; and (3) $4,251.49 in fees for activities not covered by either flat rate, including attendance at court conferences, participation in a settlement conference, responding to defendants' discovery requests, and preparing a reply brief for the present motion.  *See* Lower Decl. ¶ 8; Lower Supp. Decl. ¶ 2.

In order to assess the reasonableness of the proposed award, the Court must determine "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see generally Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (describing the "lodestar approach"); *see also Crescent Publ'g Group, Inc. v. Playboy Enters.*, 246 F.3d 142, 150 (2d Cir. 2001) (applying lodestar method in copyright infringement case). This "boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany*, 493 F. 3d 110, 112, 118 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008)). The reasonableness of an hourly rate is guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The relevant community is this District. *Arbor Hill Concerned Citizens*, 522 F.3d at 190–91.

The party seeking attorneys' fees "bears the burden of . . . documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The Court must pay careful attention to the hours for which attorneys seek compensation, and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Hensley*, 461 U.S. at 434) (internal quotation marks omitted); *accord Wong v. Mangone*, 450 F. App'x 27, 32 (2d Cir. 2011) (summary order) (upholding reduction based on "duplicative hours").

Here, plaintiffs' counsel has submitted an invoice that "set[s] forth the date on which services were performed, the hours spent, and the nature of the work performed for each attorney

and . . . paralegal.  Such a submission meets the evidentiary threshold for the recovery of attorney's fees."  *Spalluto v. Trump Int'l Hotel & Tower*, No. 04 Civ. 7497 (RJS) (HBP), 2008 WL 4525372, at *7 (S.D.N.Y. Oct. 2, 2008) (adopting report and recommendation); *see* Lower Decl., Ex. H ("Invoice").

As to the services not included in the flat rates, all such work (amounting to a total of 11.5 hours) was performed by Lower, billing at a discounted hourly rate of $358.05 (for work performed before September 1, 2015) or $372 (for work performed after September 1, 2015). *See* Invoice, at 3–5; Lower Decl. ¶¶ 8, 12; Lower Supp. Decl. ¶ 2.  The Court finds these rates reasonable in light of Lower's seven years of experience and the considerable responsibility he assumed in this action.  *See, e.g.*, *Genger v. Genger*, No. 14 Civ. 5683 (KBF), 2015 WL 1011718, at *2 (S.D.N.Y. Mar. 9, 2015) ("New York district courts have . . . recently approved rates for law firm associates in the range of $200 to $450 per hour."); *Dweck v. Amadi*, 10 Civ. 2577 (RMB) (HBP), 2012 WL 3020029, at *4 & n.5 (S.D.N.Y. July 6, 2012) (collecting cases approving rates between $180 and $440 per hour for associates); *OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.*, No. 09 Civ. 8665 (JGK) (FM), 2010 WL 5538552, at *4 (S.D.N.Y. Dec. 6, 2010), *report and recommendation adopted*, 2011 WL 43459 (S.D.N.Y. Jan. 5, 2011) (approving rates between $355 and $400 per hour for associates); *Union of Orthodox Jewish Congregations of Am. v. Royal Food Distributors Liab. Co.*, 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009) (approving associate hourly rate of $445); *Nat'l Ass'n for Specialty Food Trade, Inc. v. Construct Data Verlag AG*, No. 04 Civ. 2983 (DLC) (KNF), 2006 WL 5804603, at *6 (S.D.N.Y. Dec. 11, 2006), *report and recommendation adopted*, 2007 WL 656274 (S.D.N.Y. Feb. 23, 2007) (approving associate rate of $325 per hour).

In order to assess the reasonableness of the fees generated pursuant to the flat rate agreements, the Court calculated the hourly rates effectively charged by Gibbons P.C. for the work performed by each timekeeper.  The "Hours" column of the chart below reflects the number of hours spent by each member of Gibbons P.C. on work covered by the two flat rates. The "Base Rate" column reflects each timekeeper's standard hourly rate.[13]  The "Base Rate Bill" column reflects the amount of fees that would have been generated had each timekeeper billed at his or her standard rate.  As the chart indicates, the "Flat Rate Bill" of $17,500 (calculated by combining the two flat rates) reflects a 38.02% discount of the "Base Rate Bill" that would have been generated by using counsels' standard hourly rates.  Applying this discount to the standard hourly rate of each timekeeper yields the following discounted hourly rates: (1) $247.92 for Lower; (2) $371.88 for McKeon; (3) $130.16 for Brech; and (4) $127.06 for Sammy.

|  | Hours | Base Rate | Base Rate Bill | Discount Rate | Flat Rate Bill |
|---|---|---|---|---|---|
| Lower | 64.7 | $400.00 | $25,880.00 | $247.92 | $16,040.42 |
| McKeon | 2.5 | $600.00 | $1,500.00 | $371.88 | $929.70 |
| Brech | 2.9 | $210.00 | $609.00 | $130.16 | $377.46 |
| Sammy | 1.2 | $205.00 | $246.00 | $127.06 | $152.47 |
|  | **71.3** |  | **$28,235.00** |  | **$17,500.00** |
|  |  |  |  |  |  |
|  |  | **Discount** | **38.02%** |  |  |

Each of these rates is well within the range of hourly rates approved by other courts in this District for similarly experienced attorneys and paralegals.  *See, e.g.*, *BMI v. Pamdh*, 2014 WL 2781846, at *7 (approving hourly rates of $570 for partner with 15 years' experience in copyright law, $200 for paralegal with 13 years' experience, and $160 for paralegal with two

---

[13] Although the rates of Lower, Brech, and Sammy increased slightly after September 1, 2015— Lower's hourly rate increased from $385 to $400, Brech's hourly rate increased from $205 to $210, and Sammy's hourly rate increased from $200 to $205, *see* Lower Decl. ¶ 12—the effect of this change on the Court's overall calculation is *de minimis* and does not impact the Court's evaluation of the reasonableness of the requested fee award.  The chart, therefore, reflects only these timekeepers' current rates.

years' experience); *Sub–Zero, Inc. v. Sub Zero N.Y. Refrigeration & Appliances Servs., Inc.*, 13

Civ. 2548 (KMW), 2014 WL 1303434, at *8–9 (S.D.N.Y. Apr. 1, 2014) (collecting cases and

approving rates of $785 and $485 for partners, and $200 for a paralegal); *Pyatt v. Raymond*, 10

Civ. 8764 (CM), 2012 WL 1668248, at *6 (S.D.N.Y. May 10, 2012) (collecting cases approving

rates ranging from $400 to $650 for partners in copyright and trademark cases); *Union of*

*Orthodox Jewish Congregations of Am.*, 665 F. Supp. 2d at 437 (finding partner and associate

rates of $735 and $445, respectively, reasonable); *GAKM Res. LLC v. Jaylyn Sales Inc.*, 08 Civ.

6030 (GEL) (THK), 2009 WL 2150891, at *8 (S.D.N.Y. July 20, 2009) (adopting report and

recommendation approving $650 and $600 hourly rates for partners specializing in intellectual

property litigation, and $195 hourly rate for paralegal).  They are, therefore, approved.

Finally, the Court has reviewed the Invoice and concludes that it reflects sound billing

practices:  It is thorough, detailed, and easy to understand, with no evident duplication of effort.

Accordingly, the Court finds the hours that counsel expended reasonable.

The Court thus approves the requested fee award in its entirety.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is granted in full.  It

is hereby ordered that defendants, their agents, employees, and all persons acting under their

permission or authority are permanently enjoined from infringing, in any manner, the

copyrighted musical compositions licensed by BMI.  The Clerk of Court is respectfully directed

to enter judgment in favor of plaintiffs and against defendants in the amount of $59,864, which

represents $37,500 in statutory damages ($12,500 per infringement), $612.92 in costs, and

$21,751.49 in attorneys' fees.  The Clerk of Court is directed to terminate the motion pending at

Dkt. 21 and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: January 21, 2016
       New York, New York